1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DONALD MCKNIGHT,

                        Petitioner,

        v.

RON HAYNES,

                        Respondent.

Case No. C15-5886 BHS-KLS

**REPORT AND
RECOMMENDATION
Noted For:  May 20, 2016**

11  Petitioner Donald McKnight seeks 28 U.S.C. § 2254 habeas relief from his 2011

12  convictions of first-degree burglary with a deadly weapon enhancement (Count I), residential

13  burglary (Count II), and making or having burglary tools, a gross misdemeanor (Count III).  Dkt.

14  12, Exhibit 1.  Mr. McKnight raises four grounds for federal habeas relief: (1) denial of fair trial

15  for failure to sever counts 1 and 2; (2) ineffective assistance of counsel; (3) insufficient evidence

16  for conviction as to Count III; and, (4) cumulative error.  Dkt. 4-1 (Amended Petition), at 5, 8,

17  11, 16.

18  The undersigned recommends **DENYING** the petition and **DENYING** issuance of a

19  certificate of appealability.

20  **BACKGROUND**

21  **A.    Facts**

22  The Washington Court of Appeals summarized the facts of Mr. McKnight's crimes and

23  the procedural history as follows:

REPORT AND RECOMMENDATION - 1

First Degree Burglary with a Deadly Weapon

On the morning of December 30, 2010, Jennifer Hermann woke up to the sound of her puppy barking in the living room of her Longview house. Hermann left her three-year old son sleeping in her bed and got up to investigate. She saw a man rummaging through a drawer in the kitchen. The intruder was wearing a dark hood and carrying a small flashlight and a backpack. She turned on a light and yelled repeatedly, "what are you doing in my house?"

The intruder ran toward Hermann, holding a yellow bar over his head as if to hit her. As he got within three feet of Hermann, she recognized his face and said, "I know who you are." Hermann grabbed the man's backpack. The intruder struck her on the side of the face, knocking her down. Hermann heard her son crying and saw him standing in the living room. Hermann grabbed the yellow club and began hitting the intruder with it and chasing him out of her house. As the man ran, he knocked Hermann's son into a wall and went out the back door.

Although Hermann recognized the intruder's face, she could not immediately remember his name. Days later, she recalled his name and told the investigating officer that it was Donny Abdich who had broken into her home. Abdich also goes by the name Donald McKnight. The officer showed Hermann the pictures of six men, and she singled out McKnight as the intruder.

Residential Burglary

On the night of April 12, 2011, Ashley Rae's house, located about seven blocks from Hermann's, was burglarized. Rae was working at a gas station near her home. She asked a co-worker, Brad Lowe, and his friend to drive to her house to pick up something she had forgotten. Lowe testified that when he tried the house key Rae gave him, the front door would not open. Lowe struggled with the door, gave it a shove, and heard something fall on the other side. Once inside, Lowe discovered that a steak knife had been wedged in the door frame. Lowe then saw a man turn, run toward the back of the house, and escape through an open window. As the intruder ran, he lost a Nike tennis shoe.

The investigating officer, Mike Watts, was unable to retrieve finger prints, but he found two backpacks in the living room. One backpack contained gloves, screwdrivers, pliers, a file, a magnifying glass, a small flashlight, and several documents bearing McKnight's name.

At trial, Lowe identified McKnight, although he initially told Officer Watts he did not think he would be able to. Watts testified that he took the backpack, shoe, and knife to McKnight's mother's house, a few blocks away from Rae's house, to see if she could identify them. He said Dorthea McKnight identified the items as belonging to her son. At trial, Dorthea testified that she only told the officer she thought the backpack was her son's, but she did not know

1    to whom the shoe belonged and was not shown the knife.

2    Burglary Tools

3         On April 28, 2011, Dorthea called Longview police asking them to
4    remove her son, who did not have permission to be in her house but had crawled
     in through the back window.  The officer who responded arrested McKnight and
5    searched him incident to arrest, finding a Phillips screwdriver, wrench, large file,
     rod, and Craftsman's tool with a knife on it.

6    Dkt. 12, Exhibit 2, at 1-3.

7    **B.      State Court Procedural History**

8         Mr. McKnight appealed his conviction to the Washington Court of Appeals.  Dkt. 12,

9    Exhibit 4.  The court affirmed his conviction in an unpublished opinion.  Id., Exhibit 2.  Mr.

10   McKnight petitioned for review in the state's highest court.  Id., Exhibit 7.  The Washington

11   Supreme Court denied review without comment on August 6, 2013.  Id., Exhibit 9.  The

12   Washington Court of Appeals issued its mandate on February 16, 2011.  Id., Exhibit 10.

13        On August 26, 2014, Mr. McKnight filed a pro se personal restraint petition with the

14   Washington Court of Appeals.  Id., Exhibit 11.  The Washington Court of Appeals dismissed the

15   petition.  Id., Exhibit 12.  Mr. McKnight filed a motion for discretionary review in the state's

16   highest court.  Id., Exhibit 13.  The court denied the motion in a ruling by the commissioner.  Id.,

17   Exhibit 14.  Mr. McKnight filed a motion to modify the commissioner's ruling which was

18   denied.  Id., Exhibit 15.  The Washington Court of Appeals issued a certificate of finality on

19   December 23, 2015.  Id., Exhibit 17.

20                                  **DISCUSSION**

21   **A.      Claim 1 - Failure to Sever**

22        Mr. McKnight contends that his right to a fair trial was violated when the trial court

23   denied his counsel's motion to sever Counts 1 and 2.  In Count I, Mr. McKnight was charged

REPORT AND RECOMMENDATION - 3

1   with burglary in the first degree with deadly weapon enhancement, which occurred on December

2   30, 2010.  In Count II, he was charged with residential burglary, which occurred on April 12,

3   2011.  Dkt. 6, at 6.  Mr. McKnight contends that had the counts been severed, the state would not

4   have been able to prove either count.  *Id*.

5          The Washington Court of Appeals rejected this claim:

6                 A trial court's refusal to sever charges is reversible only for a manifest
       abuse of discretion. State v. Bythrow, 114 Wn.2d 713, 717, 790 P.2d 154 (1990).
7       A defendant seeking severance has the burden of demonstrating that a trial
       involving both counts would be "so manifestly prejudicial as to outweigh the
8       concern for judicial economy." Bythrow, 114 Wn.2d at 718.  Prejudice may
       result from joinder if the defendant is embarrassed by the presentation of separate
9       defenses, or if use of a single trial invites the jury to cumulate the evidence to find
       guilt or infer criminal disposition. State v. Russell, 125 Wn.2d 24, 62-63, 882
10      P.2d 747 (1994), cert denied, 514 U.S. 1129 (1995).

11                In determining whether the potential for prejudice requires severance, a
       trial court must consider: (1) the strength of the State's evidence of each count,
12      (2) the clarity of the defenses as to each count, (3) the court's instructions to the
       jury to consider each count separately, and (4) the admissibility of evidence of the
13      other charges even if not joined for trial.  Russell, 125 Wn.2d at 63.  These same
       factors are applied by reviewing courts to determine if a trial court's denial of
14      severance was unduly prejudicial.  State v. Cotten, 75 Wn.App. 669, 687, 879
       P.2d 971 (1994), review denied, 126 Wn.2d 1004 (1995).

15

16                Concerning the first factor, McKnight argues the State's evidence on the
       first-degree burglary count was stronger than on the residential burglary charge
17      because Hermann told police she recognized him at first sight.  He argues the
       evidence "was not as compelling on identification" in the residential burglary at
       Rae's house.

18

19                Evidence is sufficiently strong if it would allow a rational jury to find the
       defendant guilty of each charge independently.  State v. Bryant, 89 Wn. App. 857,
20      867, 950 P.2d 1004 (1998), review denied, 137 Wn.2d 1017 (1999).  The
       evidence in the Rae burglary meets this test, particularly considering the backpack
21      the burglar left in Rae's house that was full of documents with McKnight's name
       on them.  McKnight contends the jury was entitled to believe that the true burglar
22      at Rae's house was someone who had stolen his backpack.  This is possible, but
       unlikely, considering Lowe's identification of McKnight and Dorthea's tentative
       identification of the backpack as belonging to her son.  The jury was also entitled
23      to infer from the documents that McKnight was the burglar at Rae's house and to
       add that inference to Lowe's identification of McKnight at trial.

REPORT AND RECOMMENDATION - 4

As to the second factor, clarity of defenses, McKnight contends on appeal that he would have taken the stand to defend himself against the first degree burglary count involving Hermann, but for his desire to exercise his right to remain silent on the residential burglary at Rae's house.  At the hearing on the motion to sever, McKnight's attorney explained there was a potential alibi witness the defense had been unable to locate, and McKnight's "litany of prior convictions" made it undesirable for him to take the stand on the second burglary. "The problem is that if I have to put him on the stand for that count, there is too much potential bleed over towards Count 1, which is a really serious case – a really serious count, burglary in the first degree with a deadly weapon enhancement."

A defendant's desire to testify only on one count requires severance only if he makes a convincing showing that he has important testimony to give concerning one count and a strong need to refrain from testifying about another. Russell, 125 Wn.2d at 65 (finding defendant was not unduly prejudiced by joinder of three counts of murder, each involving separate murder; defendant had made no offer of proof as to anticipated testimony); see also State v. Weddel, 29 Wn.App. 461, 468, 629 P.2d 912 ("In the absence of evidence of the contrary, we conclude that the overriding reason why defendant chose not to testify was not his fear of incriminating himself on the attempted burglary count, but rather his realization that the State would use a prior burglary conviction for impeachment."), review denied, 96 Wn.2d 1009 (1981).

McKnight, like the defendant in Russell, made no offer of proof.  The record does not indicate what testimony he wanted to give concerning the burglary at Hermann's house. The only comments his attorney made about that burglary were to the effect that McKnight's sister's testimony and the testimony of other witnesses would cast doubt on Hermann's identification of McKnight. McKnight's argument on appeal does not go beyond a general desire to testify as to one count but not the other.  As in Russell, absent an offer of proof, we cannot conclude that joinder affected McKnight's decision not to testify.  Russell, 125 Wn.2d at 65-66.

McKnight challenges instruction 7, which told the jury "to decide each count separately."  He contends the instruction falls "miserably short" in telling the jury to parse out the evidence it could consider as to each count because jurors were not specifically told, for example, that they could not consider the paperwork with McKnight's name, which was found at Rae's house, to support the conclusion that he was the intruder at Hermann's house.

Instruction 7 stated, "A separate crime is charged in each count.  You must decide each count separately.  Your verdict on one count should not control your verdict on any other count."  Instruction 5 told the jury not to "use the fact that the defendant has not testified to infer guilt or to prejudice him in any way."

Instruction 6 told them to "consider evidence that a witness has been convicted of a crime only in deciding what weight or credibility to give to the testimony of the witness, and for no other purpose."  These are standard pattern instructions. McKnight points to no objection in the record preserving the issue for appeal and does not argue his trial counsel was ineffective for failing to propose an alternative instruction, so he fails to raise a manifest error affecting a constitutional right.

Concerning the fourth factor, cross-admissibility, McKnight argues on appeal that none of the evidence in the first degree burglary at Hermann's house "should have been admissible" in a trial for the burglary at Rae's house because its "sole purpose would have been" to establish guilt through propensity evidence barred by ER 404(b).  He cites a trio of cases . . . .

None of these cases involved severance, and while they do analyze the specific prejudice each defendant encountered, McKnight fails to do the same, to show how he specifically was prejudiced at trial.  A more analogous case is Bythrow, where the Supreme Court considered two separate robberies and held that severance was not automatically required where evidence of one would not have been admissible in a separate trial on the other.  Bythrow, 114 Wn.2d at 720. In Bythrow, the court determined that the manner in which the two robberies were committed, one of a donut shop and the other of a gas station, was not so unique as to help prove identity under ER 404(b).  Bythrow, 114 Wn.2d at 720. Nonetheless, where the issues were relatively simple, the trial was short, and the jury could be reasonably expected to compartmentalize the evidence, "there may be no prejudicial effect from joinder even when the evidence would not have been admissible in separate trials."  Bythrow, 114 Wn.2d at 721.  "In order to support a finding that the trial court abused its discretion in denying severance, the defendant must be able to point to specific prejudice."  Bythrow, 114 Wn.2d at 720.

Here, the trial court did find the evidence of the two burglaries cross-admissible for identification purposes:

> I think there is an issue of identification.  That will be a major
> issue in this case.  And, because of that, the evidence of the
> backpack being found at the location of Count 2 during the process
> of a burglary with a Defendant who meets the description of the
> Defendant generally makes its cross-admissible on – on Count 1.

Giving due weight to all the factors, the trial court concluded that trying the counts together was not so unfairly prejudicial as to outweigh the value of judicial economy.  *See Bythrow*, 114 Wn. 2d at 722 (defendant must not only establish prejudice but "also demonstrate that a joint trial would be so prejudicial as to outweigh concern for judicial economy.")  The court did not abuse its discretion by denying severance.

REPORT AND RECOMMENDATION - 6

Dkt. 11, Exhibit 2, at 4-9.

Habeas relief on a joinder challenge is appropriate only "if the joinder resulted in an unfair trial. There is no prejudicial constitutional violation unless 'simultaneous trial of more than one offense ... actually render[ed] petitioner's state trial fundamentally unfair and hence, violative of due process.'" *Sandoval v. Calderon*, 241 F.3d 765, 771-72 (9th Cir.2001), *cert. denied*, 534 U.S. 847 (2001) and *cert. denied*, 534 U.S. 943 (2001) (*quoting Featherstone v. Estelle*, 948 F.2d 1497, 1503 (9th Cir.1991)) (omissions and modifications in original).  The requisite level of prejudice is reached only "if the impermissible joinder had a substantial and injurious effect or influence in determining the jury's verdict." *Sandoval*, 241 F.3d at 772 (*citing Bean v. Calderon*, 163 F.3d 1073, 1086 (9th Cir.1998)).  In evaluating prejudice, the Ninth Circuit focuses particularly on cross-admissibility of evidence and the danger of "spillover" from one charge to another, especially where one charge or set of charges is weaker than another.  *See, e.g., Sandoval*, 241 F.3d at 772; *Bean*, 163 F.3d at 1084.

Undue prejudice may also arise from the joinder of a strong evidentiary case with a weaker one.  *See id.*; *Bean*, 163 F.3d at 1085.  *See also Lucero v. Kerby*, 133 F.3d 1299, 1315 (10th Cir.) ("Courts have recognized that the joinder of offenses in a single trial may be prejudicial when there is a great disparity in the amount of evidence underlying the joined offenses. One danger in joining offenses with a disparity of evidence is that the State may be joining a strong evidentiary case with a weaker one in the hope that an overlapping consideration of the evidence [will] lead to convictions on both.") (alteration in original) (citation omitted), *cert. denied*, 523 U.S. 1110, 118 S.Ct. 1684, 140 L.Ed.2d 821 (1998); *see also Lewis*, 787 F.2d at 1322 (considering relative strength of evidence underlying joined charges as factor showing undue prejudice).  This creates "the human tendency to draw a conclusion which is

REPORT AND RECOMMENDATION - 7

1    impermissible in the law: because he did it before, he must have done it again." *United States v.*

2    *Bagley*, 772 F.2d 482, 488 (9th Cir.1985).

3         Even if the evidence concerning one of the crimes is limited or not admissible, a refusal

4    to sever will not be considered improper if the jury can reasonably be expected to

5    "compartmentalize" the evidence so that evidence of one crime does not taint the jury's

6    consideration of another crime. *United States v. Douglass*, 780 F.2d 1472, 1479 (9th Cir.1986)

7    (citations omitted) (affirming district court's refusal to sever trials of defendants charged with

8    offenses relating to two-day marijuana conspiracy from trial of defendants charged with

9    continuing criminal enterprise). "We must insure that the trial court properly instructed the jury

10   on the limited admissibility of evidence, *id.*, and will determine whether the jury appeared to

11   have followed the instructions." *United States v. Hsieh Hui Mei Chen*, 754 F.2d 817, 823 (9th

12   Cir.), *cert. denied*, 471 U.S. 1139 (1985); *see also United States v. Brady*, 579 F.2d 1121, 1128

13   (9th Cir.1978) (jury could reasonably be expected to compartmentalize where the issues were

14   relatively simple and trial lasted only three days), *cert. denied*, 439 U.S. 1074 (1979).

15        Relying on *Bythrow,* the Washington Court of Appeals noted that "where the issues were

16   relatively simple, the trial was short, and the jury could be reasonably expected to

17   compartmentalize the evidence, 'there may be no prejudicial effect from joinder even when the

18   evidence would not have been admissible in separate trials.'"  Further, to support a finding that

19   the trial court abused its discretion in denying severance, the defendant must be able to point to

20   specific prejudice, which Mr. McKnight had failed to do.  Dkt. 12, Exhibit 2 at 8.

21        Here, the trial was only three days long.  Dkt. 12, Exhibit 2, at 4.  The state presented

22   evidence as to each of the counts in sequence, there were separate witnesses for each count, and

23   the jury was instructed that they must decide each count separately and that their verdict on one

REPORT AND RECOMMENDATION - 8

1  count should not control their verdict on any other count.  *Id.*, Exhibit 2, at 7 (*citing* to

2  Instruction 7: "A separate crime is charged in each count.  You must decide each count

3  separately.  Your verdict on one count should not control your verdict on any other count.")

4        The victim of the first-degree burglary, Jennifer Herrman, testified she was awoken

5  and when she went to investigate, saw a man going through her kitchen drawers.  Dkt. 12,

6  Exhibit 18, Verbatim Report of Proceedings, Volume I, at 39-41.  The victim testified she

7  actually recognized Mr. McKnight when she was only three feet from him and saw his face when

8  he was running at her.  *Id.*, Exhibit 18, at 46-69.  Ms. Herrman picked Mr. McKnight out of a

9  line up conducted after she informed police the intruder was McKnight.  *Id.* at 70.  A neighbor

10  testified she heard Ms. Herrman screaming and saw her fighting with a man in a hoodie

11  through Ms. Herrman's kitchen window.  *Id.* at 89.  The neighbor testified, "one had a

12  flashlight and one was – she was like defending herself."  *Id.* at 90.  The neighbor also testified

13  Ms. Herrman was hysterical and saying, "I think I know him. I think I've known him.  I've seen

14  him.  A few years ago.  I think I know who he is."  *Id.* at 94.

15        The witness on the residential burglary count, Brad Lowe, testified he went to Ashley

16  Rae's house to pick up some items for her.  Dkt. 12, Exhibit 19, Verbatim Report of

17  Proceedings, *State v. McKnight*, Volume II, at 200.  Mr. Lowe testified that once he was able

18  to get in the front door a knife fell from the front door and there was a person in the house.

19  *Id.* at 202-203.  Mr. Lowe described the intruder's race, hair, approximate age and

20  approximate height.  *Id.* at 204.  The intruder only had one shoe on and he saw a shoe sitting

21  in front of the fridge.  *Id.* at 205, 208.  Mr. Lowe saw two backpacks in the home and in one

22  he found a "pair of pliers, a few lighters and just all various manner of tools."  *Id.* at 206-

23  207.  Mr. Lowe admitted at trial that he did not immediately recognize Mr. McKnight as

REPORT AND RECOMMENDATION - 9

1   the intruder.  *Id.* at 209.  Following the encounter however, Mr. Lowe recalled seeing Mr.

2   McKnight with friends before and they pointed him out as someone they knew.  *Id.* at 210. On

3   cross-examination, Mr. Lowe acknowledged he did not get a good look at Mr. McKnight inside

4   the home but around back he "got a pretty good look at his face." *Id.*  Mr. Lowe acknowledged

5   he did not tell the officer this information. *Id.*

6          Officer Watts also testified regarding the residential burglary count that while

7   investigating he found a lone Nike tennis shoe, the backpacks described by Mr. Lowe and the

8   steak knife which Mr. Lowe pointed out to him as falling from the door.  Dkt. 12, Exhibit 19, at

9   154-157.  Officer Watts testified to finding a knife lying on the ground outside the residence.

10  *Id.* at 161.  Officer Watts also testified that inside one of the backpacks he found a GED official

11  transcript for Mr. McKnight, certification of education competence for Mr. McKnight,

12  certificate of completion of stress and anger management for Mr. McKnight, and a spiral

13  notebook with Mr. McKnight's name in the corner.  *Id.* at 168-174.

14         Mr. McKnight's mother Dorthea testified that the backpack found in Ms. Rae's home

15  looked like her son's backpack.  Dkt. 12, Exhibit 19, at 239.  Ms. Dorthea McKnight testified

16  she did not know who the shoe belonged to and was never shown a knife.  *Id.*  Officer Watts

17  was recalled and he testified that Ms. Dorthea McKnight told him the shoe and the knife

18  belonged to her son.  *Id.*, Exhibit 19, at 253-254.

19         In light of the relative simplicity of the issues and the straightforward manner of

20  presentation, the state court's decision denying Mr. McKnight's motion to sever the counts was

21  not objectively unreasonable or an unreasonable application of, or contrary to, clearly established

22  Supreme Court precedent.  Claim 1 should be denied.

23

REPORT AND RECOMMENDATION - 10

**B.      Claim 2 – Ineffective Assistance of Counsel**

Mr. McKnight contends that his counsel rendered ineffective assistance by failing to object to that portion of Officer Watts' testimony when he testified that Dorthea McKnight said Mr. McKnight was not home and the backpack, shoe and knife belonged to Mr. McKnight.  Dkt. 4-1, at 9.

When a petitioner raises a claim of ineffective assistance of counsel, he "must show that counsel's performance was deficient.  Second, he must show that the deficient performance prejudiced the defense." *United States v. Recio*, 371 F.3d 1093, 1109 (9th Cir. 2004) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  To determine whether counsel's performance was deficient, the reviewing court must examine "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688.  This requires the court to analyze counsel's performance with deference, as "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690.  Judicial review of attorney's performance is "highly deferential and doubly deferential when it is conducted through the lens of federal habeas." *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003).

Under the second prong of *Strickland*, petitioner must show "that counsel's errors were so serious as to deprive the defendant of a fair trial." *Recio*, 371 F.3d at 1109 (quoting *Strickland*, 466 U.S. at 687).  "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

REPORT AND RECOMMENDATION - 11

1    To succeed on a claim of ineffective assistance of counsel, based upon a failure to object,

2    the petitioner must show that the objection would probably have produced a different result in

3    the trial. *Landry v. Lynaugh*, 844 F.2d 1117, 1120 (5th Cir. 1988).  Failure to object is not

4    ineffectiveness where an objection would have lacked merit.  *U.S. v. Aguon*, 851 F.2d 1158,

5    1172 (9th Cir. 1988) (en banc), *overruled on other grounds, Evans v. U.S.*, 504 U.S. 255 (1992).

6    Only in instances of failure to object to egregious statements about testimony central to the

7    prosecution's case will failure to object establish that counsel's performance fell below an

8    objective standard of reasonableness according to prevailing professional norms.  *See Strickland*,

9    466 U.S. at 694.

10   The Washington Court of Appeals correctly applied *Strickland* and Washington state

11   cases adopting *Strickland* in rejecting Mr. McKnight's ineffective assistance of counsel claim:

12   > McKnight fails to demonstrate the requisite prejudice.  Dorthea herself
13   > testified she thought the backpack Officer Watts showed her belonged to
>    McKnight.  Her testimony as to the shoe and the knife differed from Officer
14   > Watts' testimony, but that is of no import.  Aside from the various documents
>    found inside the backpack which identified McKnight, both Hermann and Lowe
15   > positively identified McKnight as the intruder they saw in the respective
>    burglaries.  We see no reasonable possibility that the result would have been
16   > different if counsel had objected to Officer Watts' testimony.

     Dkt. 12, Exhibit 2, at 10.

17   The prosecution recalled Officer Watts to testify after Dorthea McKnight said she did not

18   know who the shoe belonged to and said she had never seen the knife. Dkt. 12, Exhibit 19, at

19   239.  Officer Watts testified that he did show Dorthea McKnight the backpack, shoe and knife

20   and she identified them all as belonging to her son.  *Id.*, Exhibit 19, at 253-254.  Pursuant to

21   Federal Rules of Evidence 613, extrinsic evidence of a prior inconsistent statement is admissible

22   if the witness is afforded an opportunity to explain or deny the statement. *United States v. Young,*

23   86 F.3d 944, 949 (9th Cir. 1996).  Dorthea McKnight was specifically asked about the shoe and

REPORT AND RECOMMENDATION - 12

the knife and she denied ever seeing the knife or stating that the shoe belonged to her son. Therefore the state was allowed to recall Officer Watts regarding the prior inconsistent statement.  Thus, there would have been no basis for trial counsel to object.

In addition, Mr. McKnight cannot show that but for counsel's errors, the result would have been different. Two witnesses identified Mr. McKnight as the burglar, Mr. McKnight's mother at a minimum identified the backpack found in Ms. Rae's home as belonging to Mr. McKnight and inside the backpack were multiple documents bearing Mr. McKnight's name. Even if counsel had objected, it is unlikely this would have affected the result of the trial given the substantial amount of evidence against Mr. McKnight**.**

Because Mr. McKnight has shown neither ineffective assistance nor prejudice, the Washington Court of Appeal's denial of Claim 2 was not contrary to or an unreasonable application of the clearly established federal law as determined by the United States Supreme Court and therefore, Claim 2 should be denied.

## C.      Claim 3 – Insufficient Evidence on Count 3 (Making/Having Burglary Tools)

At the same time he was sentenced on the first-degree burglary and residential burglary convictions, Mr. McKnight received a 365-day concurrent sentence for the misdemeanor conviction for making or having burglary tools.  Dkt. 11, Exhibit 1, at Appendix 5B.  In his third ground for relief Mr. McKnight challenges the sufficiency of the evidence on the misdemeanor conviction, arguing the trial court denied him due process by sentencing him for an offense unsupported by substantial evidence. Dkt. 4-1, at 12.  However, because Mr. McKnight's 365-day sentence for the misdemeanor offense expired long before he filed his habeas petition with this Court, he is therefore not "in custody" for purposes of 28 U.S.C. § 2254.

1    When a federal district court reviews a state prisoner's habeas corpus petition pursuant to

2  28 U.S.C. § 2254, it must decide whether the petitioner is 'in custody in violation of the

3  Constitution or laws or treaties of the United States.'   The court does not review a judgment, but

4  simply the lawfulness of the petitioner's custody.   *Coleman v. Thompson*, 501 U.S. 722, 730

5  (1991) (emphasis added).   Thus, § 2254 requires that the prisoner be "in custody" at the time the

6  habeas petition is filed.   *Carafas v. LaVallee*, 391 U.S. 234, 238-39 (1968).   Federal courts'

7  authority to entertain habeas petitions is limited to cases in which "the remedy sought is capable

8  of alleviating severe restraints on individual liberty."   *Bailey v. Hill*, 599 F.3d 976, 980 (9th Cir.

9  2010).   The "custody" requirement is commonly satisfied by the petitioner's confinement, but

10  may be satisfied even though the petitioner is not incarcerated.   For example, parole meets the

11  definition of "custody" because conditions of parole supervision "significantly restrain

12  petitioner's liberty to do those things which in this country free men are entitled to do."   *Jones v.

13  Cunningham*, 371 U.S. 236, 243 (1963); see also *Hensley v. Municipal Court, San Jose Milpitas

14  Judicial Dist.,* 411 U.S. 345, 351-52 (1973) (release on personal recognizance pending appeal is

15  "custody").

16    A habeas petitioner is not "in custody" under a conviction for purposes of federal habeas

17  jurisdiction under § 2254 when the sentence imposed for the conviction has fully expired at the

18  time the petition was filed.   *Maleng v. Cook*, 490 U.S. 488, 492 (1989).   Although a prisoner

19  serving consecutive sentences is "in custody" under any one of them for purposes of the habeas

20  statute, *Peyton v. Rowe,* 391 U.S. 54, 67 (1968), the "in custody" requirement has never been

21  extended to situations where a habeas petitioner challenges a concurrent but expired sentence

22  and suffers no present restraint from the concurrent, expired conviction.   *Mays v. Dinwiddie,* 580

23  F.3d 1136, 1140-42 (10th Cir. 2009).

REPORT AND RECOMMENDATION - 14

1       Mr. McKnight is not under any present restraint, nor will he be under any future restraint,

2 based on his conviction for making or having burglary tools. The 365-day sentence he received

3 on July 11, 2011 for that misdemeanor count was to run "concurrent" with the sentences imposed

4 for Counts I and II. *See* Dkt. 12, Exhibit 1, Appendix 5B to Judgment and Sentence (Gross

5 Misdemeanor/ Misdemeanor). That sentence expired long before he filed his habeas petition in

6 this Court in December 2015.

7       Mr. McKnight's conviction on the misdemeanor count had no effect on his 140-month

8 sentence for first-degree burglary. Mr. McKnight is not "in custody," for purposes of federal

9 habeas jurisdiction, under the misdemeanor judgment and sentence, and is therefore not entitled

10 to invoke this Court's habeas authority under 28 U.S.C. § 2254 to review the merits of a legal

11 challenge to the misdemeanor conviction. Accordingly, Claim 3 should be denied.

12 **D.    Claim 4 – Cumulative Error**

13       Mr. McKnight contends that the many errors in his trial add up to a constitutional

14 violation. The Ninth Circuit has recognized the cumulative error doctrine and has held that it

15 constitutes clearly established federal law. *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir.2007)

16 (*citing Chambers v. Mississippi*, 410 U.S. 284 (1973)). Under the cumulative error doctrine, "the

17 combined effect of multiple trial errors may give rise to a due process violation if it renders a

18 trial fundamentally unfair, even where each error considered individually would not require

19 reversal." *Parle*, 505 F.3d at 928; *see Alcala v. Woodford*, 334 F.3d 862, 893 (2003); *Mancuso

20 v. Olivarez*, 292 F.3d 939, 957 (9th Cir.2002). "[T]he fundamental question in determining

21 whether the combined effect of trial errors violated a defendant's due process rights is whether

22 the errors rendered the criminal defense 'far less persuasive,' ... and thereby had a 'substantial

23 and injurious effect or influence' on the jury's verdict." *Parle*, 505 F.3d at 928 (citations

omitted).  Usually, relief is warranted only when there is a "unique symmetry" of otherwise harmless errors, so that they amplify each other in relation to a key contested issue in the case and have a synergistic effect.  *Ybarra v. McDaniel*, 656 F.3d 984, 1001 (9th Cir.2011), *cert. denied*, 147 U.S. 508 (2012).

The Court has addressed each of the alleged errors that Mr. McKnight contends together gave rise to cumulative error, and has found that no error occurred.  Thus, unlike in *Parle*, there is nothing to cumulate.  *See Hayes v. Ayers*, 632 F.3d 500, 525 (9th Cir. 2011) ("Because we conclude that no error of constitutional magnitude occurred, no cumulative prejudice is possible."); *Mancuso*, 292 F.3d at 957 ("Because there is no single constitutional error in this case, there is nothing to accumulate to a level of a constitutional violation.").  Accordingly, Claim 4 should be denied.

**E.    Certificate of Appealability**

If the district court adopts the Report and Recommendation, it must determine whether a certificate of appealability ("COA") should issue.  Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").  A COA may be issued only where a petitioner has made "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(3).  A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

The Court recommends that Mr. McKnight not be issued a COA.  No jurist of reason could disagree with this Court's evaluation of his habeas claims or would conclude that the

1    issues presented deserve encouragement to proceed further.  Mr. McKnight should address

2    whether a COA should issue in his written objections, if any, to this Report and

3    Recommendation.

4                                              **CONCLUSION**

5            The undersigned recommends **DENYING** the petition and **DENYING** issuance of a

6    certificate of appealability.

7            Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

8    fourteen (14) days from service of this Report and Recommendation to file written objections.

9    See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for

10   purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).   Accommodating the time limit

11   imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **May 20, 2016,**

12   as noted in the caption.

13           DATED this  5th  day of May, 2016.

14

15

16                                                          Karen L. Strombom
                                                            United States Magistrate Judge

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION - 17